# IN RE GRIEVE.

---

PATENTS; PATENTABILITY; CLAIMS.

1. The protection of an inventor should be equal to his invention, as otherwise he will not enjoy the reward which the law contemplates shall be his.

2. Rule 75 of the Patent Office, which enables an applicant to avoid a patent by making oath to facts showing prior conception, is sufficiently complied with by an applicant who makes a prima facie

showing of priority over the existing patent or patents, and a substantial compliance with the rule by an applicant is sufficient to prevent a summary rejection of his application.

3. Where an applicant's invention resides in the discovery of a combination that will accomplish a definite result, he should be given claims sufficiently broad to prevent any one practising his invention by merely changing the position of the elements of the combination.

4. Where the object of an applicant for a patent was the removal of soot and other nongaseous substances from the products of combustion from boilers without materially decreasing the draft, and the Patent Office awarded him claims covering a chamber surrounding the stack, but failed to protect him against a possible attempt to practice and appropriate his invention by placing the same kind of a chamber between the boiler and the stack, it was *held*, on a review of the references cited, that the Commissioner should have allowed one of his claims, which would have had that effect, or a claim of equal breadth; and also that if in the opinion of the Commissioner that claim and those already allowed would not afford the applicant sufficient protection, he might, in the exercise of his discretion, allow another claim or claims.

No. 1066.    Patent Appeals.    Submitted November 17, 1916.    Decided December 4, 1916.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting certain claims in an application for a patent.                              *Reversed as to one claim.*

The COURT in the opinion stated the facts as follows:

Appeal from a decision of the Patent Office rejecting claims 1, 3 to 9 inclusive, 11, 13, 16 to 21 inclusive, 23, 25, and 27 an application for patent. Claims 1 and 13 sufficiently illustrate the claims involved and are here reproduced:

"1. In an apparatus for removing nongaseous particles from the products of combustion from boilers, a boiler, a stack, and a chamber of relatively very large proportion as compared with said boiler and said stack through which said products of combustion from said boiler pass and expand before entering said stack, whereby the velocity of said products of combustion is

reduced sufficiently to effect a deposition of nongaseous particles carried thereby."

"13. In an apparatus for removing nongaseous particles from the products of combustion from boilers, a boiler, a stack, and a chamber of nonheat-conducting material of relatively very large proportions as compared with said boiler and said stack through which said products of combustion from said boiler pass and expand before entering said stack, whereby the velocity of said products of combustion is reduced sufficiently to effect a deposition of nongaseous particles carried thereby."

The object of the invention is the removal of soot and other nongaseous substances from the products of combustion from boilers without materially decreasing the draft. In his specification appellant, Thomas Grieve, sets forth that it is his intent to accomplish the desired result "without the use of deflecting plates, walls, water sprays, or other obstructions which will decrease materially the draft in the stack by their interference with the flow of said products of combustion;" that it also is his intent to avoid such loss of heat from such products of combustion as will increase their specific gravity and lessen the normal draft in the stack. He further states that it was well known that swiftly moving currents of fluid or air will carry heavy substances which will be dropped if the velocity of the current slackens. He also concedes to be old the idea of providing a very small space in boilers between the fire and the boiler, to prevent ashes and coals from entering and clogging the boiler flues, but insists that such spaces are purposely small in order not to interfere with the draft. It likewise is conceded to be old to provide chambers in metallurgic furnaces to recover mineral from the gases, but it is pointed out that the question of draft is not considered in the construction of such chambers; that, on the contrary, they are cooling chambers to cause the mineral to deposit, which would destroy entirely any draft in the stack. The specification continues: "It never has been considered possible, however, to lessen the rate of flow in the products of combustion from boilers sufficiently to remove all the lighter particles from the products of combustion without destroying

the draft necessary to be maintained. I dicovered I could do this by the use of a chamber of exceedingly large proportions and affording space for expansion in all directions. I also discovered that I could increase the effectiveness of the deposit without interference with the draft by changing the direction of flow of the expanded gases. The preservation of the heat of the gases is a material aid in maintaining the necessary draft in the stack, which I have facilitated by constructing the chamber of nonheat-conducting material."

Among the references cited by the Examiner was a patent to Worm, No. 1,092,551, issued April 7, 1914, on an application filed May 24, 1912, covering a cement-manufacturing apparatus. Thereupon appellant filed affidavits, under rule 75 of the Patent Office, which enables an applicant to avoid a patent by making oath to facts showing a conception of the invention in this country before the filing of the application on which a domestic patent was granted, or before the date of a foreign patent, or before the date of a printed publication, that he neither knows nor believes that the invention has been in public use or on sale in this country or patented or described in a printed publication in this or a foreign country for more than two years prior to his application; and that he never abandoned his invention.

In appellant's affidavit he stated that before the filing date of the Worm application he made oral disclosure of one embodiment of his invention, which involved an existing battery of boilers and stack, and comprised the interposition of a large chamber between the two of such dimensions as to reduce the velocity in the chamber of the products of combustion from the boilers sufficient to effect the deposition of nongaseous particles carried thereby, without lessening appreciably the draft in the stack; that, in addition to this, the chamber was so constructed as to conserve the heat of the gases therein.

In the supporting affidavit of Mr. F. L. Antisell, mechanical engineer and assistant superintendent of the Raritan Copper Works, Perth Amboy, New Jersey, it was stated that, for "the past four or five years" (that is, from 1910 or 1911, the date

of the affidavit being April, 1915), his company had experienced considerable difficulty owing to the deposit of soot and dust from its smokestacks, and that it had been in constant receipt of complaints from the inhabitants of Perth Amboy; that various expedients had been tried as the result of an investigation of other plants and other methods. We now quote from the affidavit: "All the various devices used and investigated not only failed to prevent the deposit, but seriously impaired the draft of the stack to which they were applied. On or about March 12, 1914, we installed a Grieve Dust Collector on one of our stacks, the deposit from which was so bad that the workmen were obliged to turn up their collars when passing it vicinity. This stack is 175 feet high, about 12 feet in diameter, and receives the products of combustion from a boiler of about 2,500 horse power. The Grieve Dust Collector installed comprises a chamber of hollow tile about 38 feet square, with the stack approximately at its center. The products of combustion enter the chamber at one end, pass down each side of the chamber, and enter the stack through an opening in the stack on the opposite side of the stack from the opening into the chamber. We take out of the chamber 4 or 5 tons daily of deposit, which we burn again by mixing with a certain proportion of soft coal. The draft of the stack is not impaired, and the various tests show a high degree of efficiency. * * * The complaints have ceased, and the Grieve Dust Collector has been so successful that plans now are being made to apply a similar device to a 200-foot stack connected to a boiler having 4,000 boiler horse power."

The affidavit further stated that previous to May 24, 1912, appellant disclosed to affiant "one embodiment of his invention which contemplated the placing of a chamber between a battery of boilers and their stack, of such dimension as to reduce in said chamber the velocity of the products of combustion from said boilers sufficiently to produce a deposition of nongaseous particles therein;" that the chamber was to be constructed in such a manner as to conserve the heat of the gases passing therethrough.

The Examiner did not regard these affidavits as sufficiently explicit. Thereupon appellant filed a supplemental affidavit in which he stated that in the year 1912 he conducted many experiments in order to test his invention, and that previous to May 24, 1912, he endeavored to have the said Raritan Copper Works install an apparatus embodying his invention, but was unable to get them to do so until they had unsuccessfully tried other devices; that he reduced his invention to practice as soon as he could. The Examiner, however, still refused to accept the affidavits, and the Examiners in Chief, without discussion, rejected them. On appeal to the Assistant Commissioner, he did not deem it necessary to pass upon the sufficiency of these affidavits, but observed that they "did not state whether the construction suggested by applicant was the same as that shown in his application or, if not, what the construction was."

In addition to the claims allowed by the lower tribunals, the Assistant Commissioner allowed claim 2, which we here reproduce: "2. In an apparatus for removing nongaseous particles from the products of combustion from boilers, a boiler, a stack, and a chamber surrounding said stack of relatively very large proportion as compared with said boiler and said stack, through which said products of combustion from said boiler pass and expand before entering said stack, whereby the velocity of said products of combustion is reduced sufficiently to effect a deposition of nongaseous particles carried thereby."

The reasons stated for the allowance of this claim were the statements in the specification to the effect that it is very important that the draft be not lessened, that the chamber walls be constructed of nonheat-conducting materials, and that the placing of the chamber around the stack tends to prevent the cooling of the gases. The Assistant Commissioner said: "It is not believed that the references suggest such a construction. In the fume arresters there is sometimes a cooling effect which would interfere with the normal draft, and in the construction shown in the British patent the settling chamber does not surround the stack, and, moreover, the separation of the solid particles is caused by centrifugal force."

*Mr. Edwin J. Prindle* and *Mr. Warren H. Small* for the appellant.

*Mr. William R. Ballard* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

We think it will be apparent at once that appellant has made a meritorious invention, which marks a distinct and practical advance in the art. The action of the lower tribunals of the Patent Office allowing claims covering a specific embodiment of the settling chamber with reference to the stack amounts to a recognition that appellant has made a novel and useful discovery, while the decision of the Assistant Commissioner still more fully recognizes the scope and originality of that discovery. In considering the references it is well to have in mind that appellant has accomplished the object in view, that is, the removal of nongaseous substances from the products of combustion, without the use of deflecting plates, water sprays, or other obstructions, without loss of heat from said products of combustion, and without impairing the normal draft of the stack. In other words, appellant's chamber is so constructed and arranged that, independently of any other agency, it accomplishes this highly useful result. It goes without saying that the protection of an inventor should be equal to his invention, for otherwise he will not enjoy the reward which the law contemplates shall be his.

We now will briefly discuss the references relied upon by the Patent Office. The patent to Brett, No. 305,788, covers an "oxidizing and chloridizing furnace," in which an entirely different problem confronted the inventor than that with which appellant dealt. In that patent the ore is fed into the stack and down through the heat and flame. The "dust chamber" there shown is merely an aid in saving all the elements of the ore. It really is an adjunct of the furnace. That no thought was given to draft, and that such a chamber erected in connec-

tion with an ordinary boiler would utterly fail to accomplish the object appellant had in mind, is apparent.

The patent to Van Horn, No. 1,012,301, covers a spark arrester, "designed especially for use in connection with locomotives." The chief feature of that invention, according to the specification, "consists in providing a centrifugal separator arranged to give the exhaust gases one or more vertically disposed revolutions before the same reach the smokestack." Between the means for providing these revolutions and the smokestack is a baffle plate. Van Horn was dealing with a locomotive engine, in which there is a forced draft, and he measurably accomplished the object he had in view by centrifugal force and a baffle plate. We fail to perceive that what he did in any way anticipated appellant's work.

The British Patent to Dudley, No. 21,251, also covers a spark arrester for locomotive engines, operating under forced draft. What we have said concerning the Van Horn patent applies with equal force to this.

We come now to the Worm patent. The apparent object of rule 75 is to require an applicant at least to make a prima facie showing of priority in order to overcome the references mentioned in the rule. Certainly where an applicant substantially complies with the rule, his application should not be rejected summarily. In the present case, appellant states that prior to the date of the Worm application he explained his invention to the officials of the Raritan Copper Works and attempted to have that company install it. While he did not state how long prior to the date in question he first approached that company, it sufficiently appears from the affidavit of Mr. Antisell that it could not have been earlier than 1910 or 1911. Appellant in his affidavit says that the construction which he explained comprised the interposition of a large chamber between the boilers and a stack of such dimensions as to reduce the velocity of the products of combustion and effect a deposition of nongaseous particles without lessening appreciably the draft in the stack, and that in addition the chamber was to be constructed so as to conserve the heat of the gases therein. Mr.

Antisell's affidavit corroborates this statement, and we fail to perceive wherein the statement could have been more definite, unless the actual dimensions of the chamber had been given. Certainly it would have required no invention for any one measurably skilled to have installed the apparatus described by appellant. Nor do we think there is any failure to show diligence. Appellant was not concealing his discovery, but, on the contrary, diligently endeavoring to have it tested, and the only way it could be tested was by such an installation as actually took place. This was not a hand tool, but an idea, and its demonstration involved a large expenditure, much beyond the means of appellant. Of course, he might have filed an application, but, for the purposes of rule 75, we think his affidavit sufficient.

Moreover, even though the Worm patent be considered as a reference, what was said of the Brett patent would apply to this, for Worm's object was to deflect and conserve particles of raw material.

As previously pointed out, the Patent Office has awarded claims to appellant covering a chamber *surrounding the stack,* but it has failed to protect appellant against a possible attempt to practise and appropriate his invention by placing the same kind of a chamber between the boiler and the stack. We are convinced that the reasons underlying the grant of the allowed claims require the allowance of another claim or claims which will more adequately protect appellant. In other words, since appellant's invention resides in the discovery of a combination that will accomplish a definite result, he should be given claims sufficiently broad to prevent anyone from practising his invention by merely changing the position of the elements of the combination. We think claim 13, or a claim of equal breadth, should have been allowed. Throughout his specification appellant lays stress upon the importance of maintaining heat in the products of combustion and of constructing his chamber to that end, but a fair reading of his specification leaves no room for doubt that the desired result may be accomplished even though the chamber is located outside the stack. Claim 13

covers the disclosures of the specification, and its allowance will more adequately protect this inventor.

The decision is reversed as to claim 13.

The following opinion, delivered by Mr. Justice ROBB, February 17, 1917, was the result of a petition by the appellant for amplification of the former opinion of the Court:

This is a petition for amplification of our opinion in which we expressed the view that another count (No. 13), or claims, should be allowed petitioner for his more adequate protection. Thereafter petitioner, in addition to claim No. 13, asked the allowance in the Patent Office of a claim in which there is no limitation that the walls of the chamber shall be of nonheat-conducting material. The Assistant Commissioner expressing the view that under our opinion he was not at liberty to consider such a claim, this petition was filed.

As pointed out in our opinion, this petitioner has made a meritorious invention and is entitled to adequate protection. If, in the view of the Commissioner, claim No. 13, in addition to those already allowed, will not afford such protection, we think that in the exercise of his discretion he may allow another claim or claims.